**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CIVIL ACTION NO.: 2025CP1000032**

| | |
|---|---|
| **HERITAGE PROPERTY & CASUALTY INSURANCE COMPANY,** | Civil Action No. 2:25-cv-12617-RMG |
| **Plaintiff,** | |
| v. | **COMPLAINT FOR DECLARATORY RELIEF** |
| **LAURIE KRAMER and ROBERT KRAMER,** | |
| **Defendants.** | |

Plaintiff, Heritage Property & Casualty Insurance Company ("Plaintiff" or "Heritage"), by and through the undersigned counsel, files its Complaint for Declaratory Relief against Defendants Laurie and Robert Kramer (collectively the "Insureds" or "Defendants"), alleging as follows:

**PARTIES, JURISDICTION, VENUE, AND APPLICABLE LAW**

1. This is an action for declaratory judgment, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C.§ 2201, to declare the rights surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of all fees and costs.

3. At all times material to this action, Heritage was an insurance company and a citizen of the State of Florida, with principal place of business in Florida. Heritage was authorized to transact business within the State of South Carolina, and submits itself to the jurisdiction and venue of this Court for purposes of this case only.

4. Heritage is informed and believes, and thereupon alleges, that the Defendants are citizens and residents of Charleston, South Carolina.

5. At all times material to this action, the subject insurance contract insured real property located in Charleston County, South Carolina.

6. The incidents giving rise to Insureds' claims and to this Complaint for Declaratory Relief occurred in this District such that venue is proper pursuant to 28 U.S.C. § 1391.

7. The issues upon which Heritage seeks this Court's declaration are justiciable controversies between the Parties relative to their respective rights, duties, obligations, and entitlements under an insurance contract between Heritage and the Insureds identified by policy number SCH0022672 (the "Policy"). *A true and correct copy of the Policy is attached hereto as Exhibit "1".*

8. The issues in controversy in this action are governed by the laws of South Carolina because the Policy between Heritage and the Insureds relates to real property located in South Carolina, incidents occurring in South Carolina, with duties under that Policy allegedly owed in South Carolina.

## SUMMARY OF DISPUTE

9. The Insureds are defendants in a state court action in South Carolina related to their alleged misrepresentations and fraudulent actions during the sale of the subject real property that they insured with Heritage. The action is entitled *Casey C Meuer, personally and as Trustee of the Casey C Meuer Trust v. Laurie Kramer, Robert Kramer, Bobbie Rose, F2F, LLC (d/b/a Keller Williams Realty – Charleston West Ashley) and Frank Joseph Klosik,* case no. 2025CP1000032 in the Court of Common Pleas,

Charleston County, South Carolina. *A true and correct copy of the operative pleading (the "Complaint") in this action is attached hereto as Exhibit "2"*. In the *Meuer* action, the underlying plaintiffs allege that the Insureds engaged in deceptive and fraudulent activity by failing to fully disclose conditions of flooding and abatement construction requirements for the subject real property on the mandatory real estate disclosure form required during the sale of the property. The underlying plaintiffs allege that the Insured's conspired with their real estate agent to withhold information to induce the sale of the property for their financial benefit and leave the underlying plaintiff with pecuniary losses and repairs costs. *Id.*

10. The Defendants tendered defense of the *Meuer* action to Heritage seeking defense and indemnity pursuant to the Policy.

11. Heritage declined coverage based on the lack of any "bodily injury" or "property damage" caused by an "occurrence" during the policy period as those terms are defined in the Policy. Specifically, the allegations by the underlying plaintiffs allege damages in two parts – damage from being fraudulently induced to purchase a property they would not otherwise have purchased, and then incurring costs related to flooding and repairs after they took possession of the property. Heritage identified that the allegations of intentional omission of information was not an "occurrence", that pecuniary loss was not "property damage" or "bodily injury", and that any alleged loss the underlying plaintiff might state that met the definition of "property damage" could not have occurred during the Policy period which terminated upon sale of the property. Additionally, Heritage informed the Defendants that the allegations set forth intentional actions by the

3

Defendants such that, if true, would trigger the expected or intended injury exclusion in the Policy, as well, further precluding coverage.

12. Without addressing any of these issues based on the facts of this case, Defendants continually insist that the allegations should be covered or at least sufficient to trigger the duty of defense under the Policy.

13. Resultantly, Heritage and Defendants disagree as to whether a defense and indemnity are owed under the Policy.

14. As such, Heritage seeks judicial declaration of the rights and responsibilities of the parties under the terms of the Policy.

## FOR A FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT; THE POLICY'S DEFINITION OF OCCURRENCE PRECLUDES COVERAGE)

15. Heritage re-alleges paragraphs 1 through 14, above, as if fully set forth herein.

16. The Policy affords insureds with a defense and/or indemnity in the event that a claim or suit is brought against an insured for damages because of "bodily injury" or "property damage" caused by an "occurrence". *See Policy, Form HO 00 03 05 11, p. 17 of 24.* An "occurrence" is defined in the Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in "bodily injury" or "property damage". *Form HO 00 03 05 11, p. 2. of 24.*

17. Here, the plaintiffs in the underlying action allege that "[r]ecurring flooding problems are so bad that the house needs to be elevated, at great cost. The sellers and their real estate agent **knew** this and misleadingly **concealed** it from the buyer."

4

Complaint, ¶1. (**Emphasis** supplied). The underlying plaintiff goes on to allege that the Defendants sold certain real property to the underlying plaintiff on February 22, 2022 and that, prior to the sale, made certain misrepresentations and omissions about specific flooding issues dating back to 2018. *See* Complaint, ¶¶ 9-10, 20. The underlying plaintiff goes on to allege that Defendants knew of issues with flooding at the property through late 2021, and details social media posts by the Defendants and their real estate agent, FEMA aid applications and other examples of Defendants knowledge of issues with the property not included on the Defendants' January 2022 mandatory real estate disclosure statement, alleging that "together, as close friends and neighbors, Sellers' Real Estate Agent and Sellers had long been making plans to sell their houses because of major flooding conditions and problems" in order to "[pass] hidden necessary costs and financing of elevating the house to" a buyer, like the underlying plaintiff, for profit to themselves. Complaint, ¶¶ 10, 18-19, 22-24. The underlying plaintiff's allegations detail known and deliberate choices on Defendants' part, as opposed to mere oversights or accidents. See Exhibit "2".

18.     Heritage understands that the underlying plaintiff labelled its claims using the word "Negligence" or "Negligent" in the Complaint. However, the actual allegations themselves do not describe accidental conduct in any way. "While alternative pleading is permitted in South Carolina, parties may not attempt to invoke coverage by couching intentional acts in negligence terms." Manufacturers & Merchants Mut. Ins. Co. v. Harvey, 330 S.C. 152, 162, 498 S.E.2d 222, 227 (Ct. App. 1998). Consequently, the underlying plaintiff's allegations do not describe an accident. Defendants' conduct is clearly alleged to be deliberate. *See* Complaint, ¶¶ 18-20, 64, 66. Indeed, the very statute requiring

5

mandatory disclosures in real estate sales that Defendants are alleged to have violated in Count III states that liability attaches for the " **[k]nowing** disclosure of false, incomplete, or misleading material information" S.C. Code Ann. § 27-50-65 **(emphasis** supplied).

19.    Resultantly, the underlying plaintiff does not allege the existence of any accidental "occurrence" as defined by the Policy. Rather, all allegations state intentional or deliberate acts and omissions. The Policy requires an "occurrence" to trigger coverage in the first instance and, lacking one, coverage is precluded.

**FOR A SECOND CAUSE OF ACTION**
**(DECLARATORY JUDGMENT; THERE WAS NO DAMAGE DURING THE POLICY PERIOD, PRECLUDING COVERAGE)**

20.    Heritage re-alleges paragraphs 1 through 19, above, as if fully set forth herein.

21.    The Policy, as stated above, affords insureds with a defense and/or indemnity in the event that a claim or suit is brought against an insured for damages because of "bodily injury" or "property damage" caused by an "occurrence". *See Policy, Form HO 00 03 05 11, p. 17 of 24.* An "occurrence" is defined in the Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, **during the policy period**, in "bodily injury" or "property damage". *Form HO 00 03 05 11, p. 2. of 24* (**emphasis** supplied).

22.    The underlying plaintiff alleges that he concluded the sale of the property with the Defendants on February 22, 2022. *See* Complaint, ¶ 9. The underlying plaintiff alleges that he performed two inspections of the subject property, on January 10 and 14, 2022, and does not allege that any "property damage" was found during these inspections. He also alleges that the closing proceeded as scheduled one month later on

February 22, 2022, without incident. *See* Complaint, ¶¶ 16-17. He also alleges that he did not discover any alleged misrepresentation or other alleged wrongdoing until **after** the sale. *See* Complaint, ¶ 18.

23.     The Policy terminated once the property was sold by the Defendants to the underlying plaintiff. *A true and correct copy of the Confirmation of Cancellation is attached hereto as Exhibit "3".* Consequently, the underlying plaintiff did not allege, and could not have suffered, any "property damage" during the Policy period.

24.     Resultantly, the underlying plaintiff does not allege the existence of any damage as defined by the Policy which occurred *during the Policy period*. Further, the allegations demonstrate that none did, nor could have, existed during that requisite time. Because the Policy only affords coverage for damages that occur during the Policy period, coverage is precluded in this case.

**FOR A THIRD CAUSE OF ACTION**
**(DECLARATORY JUDGMENT; THE POLICY'S EXPECTED OR INTENDED INJURY EXCLUSION PRECLUDES COVERAGE)**

25.     Heritage re-alleges paragraphs 1 through 24, above, as if fully set forth herein.

26.     The Policy, as stated above, affords insureds with a defense and/or indemnity in the event that a claim or suit is brought against an insured for damages because of "bodily injury" or "property damage" caused by an "occurrence". *See Policy, Form HO 00 03 05 11, p. 17 of 24.*

27.     The Policy also includes an exclusion entitled Expected or Intended Injury. *Id., p. 19 of 24*. This exclusion provides that coverage under the Policy does not apply to "bodily injury" or "property damage" which is expected or intended by an insured, even if the resulting damage is of a different kind, quality or degree than intended, or sustained

7

by a different person, entity or property than intended. *Id*. In sum, the Policy will only cover damages that result from accidents, and does not cover damages from intentional acts or omissions.

28.     Here, the underlying plaintiff's allegations state or infer that Defendants knew and failed to disclose that the property was subject to flooding, had more recent flooding issues than 2018 as disclosed, and was the subject of several requests by Defendants to FEMA and others to assist with the necessary costs of remodeling the property to avoid flood damage from recurring. *See* Complaint, ¶¶ 10, 18-20, 22-24.

29.     Accordingly, the Expected or Intended Injury exclusion precludes coverage in this case.

## FOR A FOURTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT; NO COVERED DAMAGE ALLEGED)

30.     Heritage re-alleges paragraphs 1 through 29, above, as if fully set forth herein.

31.     The Policy, as stated above, affords insureds with a defense and/or indemnity in the event that a claim or suit is brought against an insured for damages because of "bodily injury" or "property damage" caused by an "occurrence". *See Policy, Form HO 00 03 05 11, p. 17 of 24.*

32.     The Policy defines "bodily injury" as "bodily harm, sickness or disease". *See Policy, Form HO 00 03 05 11, p. 1 of 24.* The underlying plaintiff does not allege any damage to their person and no bodily injury can occur to a fictional legal entity such as the underlying plaintiff Trust. Therefore, there is no "bodily injury" alleged as required to trigger coverage under the Policy.

33. The Policy defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property." *See Policy, Form HO 00 03 05 11, p. 2 of 24.* Here, the underlying plaintiff's alleged damages are lost value or money and lost opportunity. Plaintiff does not allege that the alleged misrepresentations and omissions by Defendants prior to the cancellation of the Policy caused any physical injury to, destruction of or loss of use of tangible property. Therefore, there has been no "property damage" alleged to trigger coverage under the Policy.

34. Resultantly, the underlying plaintiff does not allege the existence of any covered damage as defined by the Policy which occurred *during the Policy period*. Because the Policy only affords coverage for defined damages that occur during the Policy period, coverage is precluded in this case.

## **CONCLUSION**

WHEREFORE, based upon the foregoing allegations and exhibits, Heritage Property & Casualty Insurance Company requests an entry of judgment in its favor against all Defendants, declaring that:

1. Heritage has no duty to defend or indemnify the Insureds for any of the claims alleged in the *Meuer* action because there is no "occurrence" as defined by the Policy;

2. Heritage has no duty to defend or indemnify the Insureds for any of the claims alleged in the *Meuer* action because there was no covered defined damage during the Policy period;

9

3. Heritage has no duty to defend or indemnify the Insureds for any of the claims alleged in the *Meuer* action because the Policy excludes damages related to Expected or Intended Injury;

4. Heritage has no duty to defend or indemnify the Insureds for any of the claims alleged in the *Meuer* action because the Policy excludes damages that are not bodily injury or property damage as defined in the Policy;

5. Heritage has no duty to defend or indemnify the Insureds for any of the claims alleged in the *Meuer* action because the Defendants failed to conform to the prerequisites of the Policy;

6. Heritage's reasonable attorney fees and costs incurred in prosecuting this Declaratory Judgment action, to the extent recoverable by law; and

7. Any other relief this Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 17th day of September 2025.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ Jason W. Burgess
L. Andrew Watson
S.C. Fed. Bar No.: 11332
Jason W. Burgess
S.C. Fed. Bar No.: 12511
11525 North Community House Road, Ste. 300
Charlotte, NC 28277
Tel:	(704) 543-2321
Fax:	(704) 543-2324
E-Mail:	awatson@butler.legal
	jburgess@butler.legal
*Attorneys for Plaintiff*